CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
Erin Murphy (Bar No. 285087)
(E-Mail: Erin_Murphy@fd.org)
Deputy Federal Public Defender
Drew Havens (Bar No. 306280)
(E-Mail: Drew_Havens@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
RICHARD RANDALL FLETES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

RICHARD RANDALL FLETES,

Defendant.

Case No. 2:23-CR-00556-MEMF

**MEMORANDUM IN SUPPORT OF SPOLIATION INSTRUCTION**

**Pretrial Conference: October 25, 2024**

**Jurv Trial: November 4. 2024**

Defendant Richard Randall Fletes, by and through his undersigned attorneys of record, hereby submits this memorandum in support of his request for a spoliation instruction.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 23, 2024

By * /s/ Erin Murphy*

Erin Murphy
Deputy Federal Public Defender
Attorney for RICHARD RANDALL FLETES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. A SPOLIATION INSTRUCTION IS WARRANTED

In a case with a 5-year mandatory minimum charge stemming from Mr. Richard Randall Fletes's alleged weapon and drug possession, the government destroyed key items of evidence: a cell phone that purportedly belonged to Mr. Fletes, a firearm magazine, and 14 rounds of ammunition.

This destruction occurred well after the USAO knew of its central value to this case. Months ago, the defense submitted a preservation request, as well as a request for the return of any property belonging to Mr. Fletes. As trial became imminent, defense counsel repeatedly requested to inspect the evidence against Mr. Fletes. Only last Wednesday was the defense informed of the destruction of this evidence. Now, in a case where the most serious charges come down to Mr. Fletes's intent in possessing drugs and a firearm with ammunition, the defense cannot inspect the cell phone attributed to him, or the magazine and ammunition he is charged with possessing.

The loss of the cell phone, in particular, prejudices Mr. Fletes. Like in any case in the 21st century, both parties rely on the contents of a cell phone to demonstrate the person's intent and what they were doing at the time of the offense. But now, without the ability to even inspect the cell phone here, the defense cannot present *any* evidence about the phone. Yet the jury will now look to Mr. Fletes to supply the evidence the government lost by testifying. He should not have to choose between his Fifth Amendment right to remain silent, and putting on a defense that the government's own failures undermined.

The government cannot justify the destruction of this evidence. The prejudice against Mr. Fletes is substantial. A remedial instruction to the jury is required.[1]

---

[1] The government opposes this request. The defense has submitted several discovery requests to the government about the destruction of this evidence, the timing of the USAO's knowledge of that destruction, and the policies surrounding the preservation and destruction of evidence. While the government has provided some

## II. STATEMENT OF FACTS

The LAPD arrested Mr. Fletes for the offenses alleged here on August 15, 2023. (Compl., ECF No. 1 at 5, ¶16.) That day, they took possession of several items of evidence and property. (Ex. A, Property Report at USAO_172–73.) Relevant here: a a magazine, ammunition, and a cell phone.[2] (*Id.*)

The United States Attorney's Office ("USAO") and its agent, ATF Task Force Officer ("TFO") Jason Malik, were plainly aware of at least the cell phone by August 23, 2023. On that date, TFO Malik photographed the cell phone, as indicated by chain-of-custody reports recently produced by the government upon defense counsel's request. (Ex. B, Chain of Custody at USAO_285 (highlighted in exhibit).) The government knew of all evidence seized by no later than August 29, 2023, when the Complaint here was filed. The Affidavit in support of the Complaint explicitly cites the now-destroyed magazine (Compl., ECF No. 1 at p. 8, ¶¶23–24), ammunition (*id.*), and the cell phone (*id.* at 3, ¶7) to obtain both an arrest warrant, and a search warrant for the cell phone. (*Id.* at 2.) In the Affidavit, TFO Malik stressed the evidentiary value of the cell phone, including representing that drug traffickers "often maintain[]" records of drug trafficking on cell phones, including notes, receipts, communications, and photos. (*Id.* at 11–12.) TFO Malik also claimed how the "*absence* of data on a digital device may be evidence of how the device was used, what it was used for, and who used it." (*Id.* at 16, ¶33c (emphasis added).)

Mr. Fletes was indicted on November 15, 2023. (ECF No. 4.) He remained in state custody until he appeared in federal court on March 18, 2024 and was ordered detained. (Mins. of Arrest, ECF No. 9.)

---

information, included here in this motion, there remain questions outstanding. To the extent any further responses from the government are germane to this motion, the defense will supplement this motion.

[2] Also seized was a "paper" with an address. (Ex. A at 8.) The defense understands this was also destroyed.

Unbeknownst to him, and his counsel, this key evidence in his case was already destroyed. On December 19, 2023, there was a "dispo authorization" for each item of seized evidence, including even the firearm and the narcotics. (Ex. B at USAO_279–281 (highlights added).) A document produced by the government late this afternoon indicates the "dispo" was authorized by "Detective Mazzacano."[3] (Ex. C - Authorization, USAO_299 (highlights in original).) Oddly, on December 10, 2023, Det. Mazzacano also authorized the destruction of the firearm itself.[4] (Ex. D - Firearm Authorization, USAO_304.) To justify the destruction, he wrote that "[t]he firearm has remained in evidence longer than (6) months and pursuant to LAPD manual section 4/560.40, the weapon can be authorized for destruction." (*Id.*) That was not true; the alleged offense here occurred on August 13, less than four months earlier.[5]

While the firearm and narcotics ultimately were not destroyed, on March 13, 2024 an officer destroyed the magazine, ammunition, and cell phone, and the destruction was indicated as "adjudicated." (Ex. B at USAO_282–83, USAO_285–86.) This means, at a minimum, some process occurred where the LAPD, notwithstanding a pending federal case, destroyed key evidence.

On April 2, 2024, defense counsel submitted a discovery request asking the government to preserve all evidence, and for a return of Mr. Fletes's personal property. (Ex. E - Disco. Req., 4/2/2024 at 3–4.) As it became clear that trial would proceed in this matter, defense counsel asked the government at least three times for an opportunity to inspect the evidence. (Murphy Decl. at ¶3.) On Wednesday of last week,

---

[3] Although the exact date of that authorization is unclear, it must have been on or before December 5, 2023 because the authorization stamp appeared on a list of property, and that list is dated December 5.

[4] It is unclear if this was approved, because there is nothing filled in under "Supervisor Approving." (Ex. D at USAO_304.)

[5] As far as the defense can tell, the government has not yet produced a similar destruction authorization for the cell phone, ammunition, magazine, or paper, i.e., the evidence that actually was destroyed.

the government informed the defense that these items of evidence—the ammunition, the magazine, and the cell phone—had been destroyed. (*Id.*)

## III. ARGUMENT

### A. Legal Standard for Spoliation Instruction

The government's loss or destruction of evidence can require a remedial jury instruction. "Bad faith is the wrong legal standard for a remedial jury instruction." *United States v. Sivilla*, 714 F.3d 1168, 1173 (9th Cir. 2013). Instead, "Courts must balance 'the quality of the Government's conduct' against 'the degree of prejudice to the accused,' where the government bears the burden of justifying its conduct and the accused of demonstrating prejudice." *Id.* (quoting *United States v. Loud Hawk*, 628 F.2d 1139, 1151 (9th Cir. 1979), overruled on other grounds by *United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) (Kennedy, J., concurring).

In determining whether a remedial jury instruction should be given, courts must balance "the quality of the Government's conduct"—which the government bears the burden of justifying—against "the degree of prejudice to the accused"—which the defendant bears the burden of demonstrating. *United States v. Sivilla*, 714 F.3d 1168, 1173 (9th Cir. 2013) (internal quotation omitted). In evaluating the government's conduct, the court should inquire whether:

> 1. the evidence was lost or destroyed while in the government's custody;
>
> 2. the government acted in disregard for the interests of the accused;
>
> 3. the government was negligent in failing to adhere to established and reasonable standards of care for police and prosecutorial functions;
>
> 4. if the acts were deliberate, whether they were taken in good faith or with reasonable justification; and

5. whether government attorneys prosecuting the case participated in the events leading to the loss or destruction of the evidence.

*Id.*

In analyzing prejudice, Courts consider the centrality and importance of the lost evidence to the case, the probative value and reliability of secondary or substitute evidence, the nature and probable weight of inferences and kinds of proof lost to the accused, and the probable effect on the jury from the absence of the evidence. *United States v. Robertson*, 895 F.3d 1206, 1214 (9th Cir. 2018).

**B. A spoliation instruction is required.**

**1. The government cannot justify its conduct in destroying key evidence of these alleged firearm and drug trafficking offenses.**

While the government may still respond to the defense's discovery requests about the destruction of this evidence, this much is already clear:

- **The evidence was destroyed while in the government's custody.**

The government knew exactly where this evidence was as early as August 23, 2023. Even though it was in LAPD storage, the agent on this case, ATF agent Jason Malik, was assigned to the Los Angeles Field Division for the LAPD as a TFO. (Compl., ECF No. 1 at p.2, ¶5.) Thus, both the ATF and the LAPD were aware of, had access to, and were in possession of these items. After all, they were working together in this investigation to charge Mr. Fletes with his possession of these very items. The government cannot reasonably dispute they were destroyed in their custody.

- **The government acted in disregard of Mr. Fletes's interests.**

According to Judge Kennedy's controlling concurrence in *Loud Hawk*, "[o]ur principal concern is to provide the accused an opportunity to produce and examine all relevant evidence, to insure a fair trial." *United States v. Loud Hawk*, 628 F.2d 1139, 1151 (9th Cir. 1979) (Kennedy, J., concurring). This was evidence so critical to the government, it cited the evidence in its Affidavit in support of an arrest warrant, and

also to obtain the ability to search the cell phone. Yet, it destroyed this relevant evidence before Mr. Fletes could examine it himself in a case where he faces a significant, mandatory sentence if convicted. It was clearly within his interests to have the opportunity to inspect the evidence; was his DNA on the ammunition? Were his fingerprints on the magazine? Did the phone contents show evidence of duress? These are questions that an inspection of this evidence could have answered. The government's actions disregarded Mr. Fletes's interests in inspecting relevant evidence, and insuring a fair trial.

- **The government's failure to adhere to established and reasonable standards of care**

The government has not yet produced the requested agency policies on the destruction and preservation of evidence. Still, it is unimaginable that the USAO, the ATF, the DEA, or any federal agency involved in this investigation would permit the destruction of relevant evidence before the defendant has even appeared on the Indictment, let alone had the opportunity to inspect it. Instead, one would expect that the USAO or one of these federal agencies has some policy and practice in place to request that local law enforcement agencies preserve evidence relevant to a federal criminal case. That is especially so when there is a TFO embedded within the local unit itself, like here with TFO Malik. Even if there was no such written policy, the established practice and reasonable standard of care would naturally dictate *some* effort to preserve such evidence. After all, the government would not have a practice or standard of *destroying* evidence in its cases. Based on the current record, no evidence shows any effort made to prevent the destruction of this evidence.

- **The destruction was deliberate, and not in good faith or with reasonable justification**

This was not an accident. A detective approved the disposition of this evidence, and then it was destroyed. And because the same detective also authorized the destruction of the firearm itself, it stands to reason that the detective (or someone else)

must have authorized the destruction of this evidence, too. It was, after all, an "adjudicated" destruction. Tellingly, the authorization to destroy the firearm misrepresented the justification altogether; it said it had been six months since the firearm was in the LAPD's possession, when that was not true. Even though the firearm ultimately was not destroyed, this flat-out misrepresentation in support of destruction of the firearm itself evinces, at a minimum a lack of good-faith on the part of the LAPD.

Based on this record, there is no reason to believe this destruction was made in good faith or with reasonable justification. There was a pending federal case concerning all of this evidence, especially the ammunition, the magazine, and the cell phone. TFO Malik knew this. It could not be a good faith decision to destroy key evidence, or fail to prevent its destruction, in that circumstance.

- **Whether government attorneys prosecuting the case participated in the events leading to the loss or destruction of the evidence.**

It remains unclear how, if at all, the federal prosecutors in this case contributed to the loss or destruction of the evidence here. We do not know what preservation requests, if any, were made by the USAO, or any other affirmative actions taken to prevent the destruction, or when exactly the government learned of the destruction. The defense has requested discovery on this issue. What is clear, though, is that on April 2, 2024, the defense requested the government to preserve all evidence and return any personal property. (Ex. E at 3–4.) It was not until months later, a few weeks before trial, and after multiple requests to inspect the evidence, when the government informed the defense that it had been destroyed. (Murphy Decl. ¶3.)

**2. Mr. Fletes's substantial prejudice is evident from the government's own words.**

All of this destroyed evidence was clearly central and important to this case, especially when it comes to Mr. Fletes's motive and intent. The government alleges Mr. Fletes possessed narcotics with the intent to distribute them, and that he possessed

a firearm and ammunition in furtherance of that offense. A key issue for these charges is Mr. Fletes's intent.

Highly probative evidence of anyone's state of mind is contained on their cell phone. In this hyperconnected world, cell phones are practical simulacra of everyone's lives. They contain calls, photos, search history, location data, bank records, social media, text messages, notes--anything a person does, it is probably reflected somehow in their phone. If we want to get an idea of what someone was really up to, and what was on their mind, his phone is going to be the best resource. It is no mystery why TFO Malik wanted to search the cell phone here, because, as his Complaint Affidavit claimed, drug traffickers often leave evidence of the crime on the phone. But just like cell phones can contain incriminating evidence, they can also contain exonerating evidence: text messages showing duress, accounts showing the phone belonged to someone else, location data that reveal exactly where the person was that day.

Now, that cell phone—and all of that evidence—is gone. There is no secondary or substitute. There was no image of the phone. There were no reports of what was on the phone. Even though the destruction of the cell phone was in no way Mr. Fletes's fault, he will bear the brunt of it. Not only does he lose the ability to inspect the cell phone and use any helpful evidence (or absence of evidence) in his defense, but now he is the only person who can tell the jury what was on the phone, or what he was doing, or what was going on in his mind. The jury will now look to him to provide that information. After all, the jury will think, if the cell phone really contained exonerating evidence, then he would just testify and tell us, right? Of course, as noted in opposing the government's motion to introduce Mr. Fletes's prior convictions under Rule 609, there are many reasons why defendants choose not to testify that have nothing to do with their guilt. (Opp. to Gov't Rule 404(b)/Rule 609 Mot. in Lim., ECF No. 33 at 15–16.) Mr. Fletes should not have to forgo his Fifth Amendment right to remain silent because the government failed to preserve key evidence in his case.

The same goes for the ammunition and magazine. These items were obviously central to the case, because Mr. Fletes is charged with possessing them. Even though there are photos of them, their destruction means Mr. Fletes cannot test them to show his DNA or fingerprints were not on them, which could suggest that the firearm and ammunition were not actually his. Now, he cannot do that. And again, the absence of this evidence means he is the only one who can rebut the government's theory.

The prejudice from the destruction of this evidence is substantial. Mr. Fletes does not have the best evidence to rebut the government's claims about his state of mind or what he was actually up to on the date of the offense. That is not his fault; it is the government's. A remedial instruction is the most minimal form of relief here.

## IV. CONCLUSION

Accordingly, the defense respectfully requests the Court read to the jury at the end of the case, an instruction like the following:

> If you find that the government intentionally destroyed 1) a cellphone, 2) a gun magazine, or 3) 14 rounds of ammunition or 4) a piece of paper that the government knew or should have known would be evidence in this case, you may infer, but are not required to infer, that this evidence was unfavorable to the government.

Ninth Circuit Model Criminal Jury Instruction, No. 3.19 (2022 ed.) [Lost or Destroyed Evidence]; *see United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir. 1979) (en banc) (Kennedy, J., concurring), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008); *United States v. Sivilla*, 714 F.3d 1168, 1173 (9th Cir. 2013).

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 23, 2024

By */s/ ERIN MURPHY*

ERIN MURPHY
Deputy Federal Public Defender
Attorney for RICHARD RANDALL FLETES

**DECLARATION OF ERIN MURPHY**

I, ERIN MURPHY, declare:

1. I am an attorney with the Office of the Federal Public Defender for the Central District of California. I am licensed to practice law in the State of California and I am admitted to practice in this Court. I am counsel of record in the above-referenced case.

2. Attached here are the following Exhibits, which, except for Exhibit E, each contain discovery produced by the government in this matter:

a. LAPD Property Report

b. Chain of Custody (with highlights I added for ease of reference)

c. Disposal Authorization

d. Destruction Authorization

e. Discovery Request, April 2, 2024

3. As it became clear that trial would proceed in this matter, I asked the government for an opportunity to inspect the evidence. I asked on September 30, October 8, October 15, and again raised it over the phone on October 16, 2024. During the October 16, 2024 call, government counsel informed me that these items of evidence--the ammunition, the magazine, and the cell phone--had been destroyed.

4. I have submitted several discovery requests to the government concerning the destruction of these items of evidence. I understand the government is still working to provide responses to my requests.

5. I discussed with the government the spoliation instruction I request here, including sending them a draft. The government objects to this instruction at this time.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 23, 2024, at Los Angeles, California.

/s/ Erin Murphy.

ERIN MURPHY